Elliott J. Stein (ES4378)
STEVENS & LEE
A Pennsylvania Professional Corporation
485 Madison Avenue, 20th Floor
New York, New York 10022
(212) 319-8500
Attorneys for Defendant
Control Solutions, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PETALS DECORATIVE ACCENTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 07-CV-8120 (HB) |
| | ) | ECF CASE |
| v. | ) | |
| | ) | |
| THE ELEVATION GROUP, LLC, | ) | **DECLARATION OF ELLIOTT J.** |
| CONTROL SOLUTIONS, INC., | ) | **STEIN IN SUPPORT OF CONTROL** |
| IMAGESOFT, INC., TONY YENIDJEIAN | ) | **SOLUTION'S MOTION TO** |
| and DINESH BAKHRU. | ) | **TRANSFER VENUE** |
| | ) | |
| Defendants. | | |

I, Elliott J. Stein declare as follows:

    1.    I am an attorney at law duly licensed to practice before the courts of the State of

New York and in this Court.  I am the attorney of record for Control Solutions, Inc., a defendant

in Case No. 07-CV-8120.  Unless otherwise indicated, I have personal knowledge of all of the

facts contained within this declaration and if called to testify thereto I could and would be

competently able to do so.

2.    Control Solutions, Inc. is a New Jersey corporation with its principal place of business at 10 County Line Road, North Branch, New Jersey 08866.

3.    Control Solutions, Inc. does not have any offices, property, employees or agents located in New York.

4.    In June 2006, Control Solutions entered into a Mutual Co-Marketing Agreement (the "Agreement") with The Elevation Group, LLC of Allentown/Bethlehem, Pennsylvania (the "Elevation Group"). Generally, under the terms of the Agreement, Elevation Group agreed to license specific software products developed by Control Solutions to end user customers. The Agreement contains a forum selection clause which clearly states that the Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey. A true and correct copy of said Agreement is attached hereto as Exhibit A.

5.    Upon information and belief, Elevation Group subsequently entered into a contract with Petals Decorative Accents, LLC a Connecticut limited liability company with offices in Tennessee.

6.    None of the negotiations between Control Solutions and Elevation Group regarding the Agreement took place in New York.

7.    The work performed under the terms of the contract between Control Solutions and Elevation Group was performed in New Jersey and Tennessee.

8.    The Control Solutions personnel who performed services under the contract between Control Solutions and Elevation Group were located in New Jersey.

2

9.     It would be inconvenient to require these key employees of Control Solutions to travel to New York.

10.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  October 18, 2007                    STEVENS & LEE, P.C.

                                            By: _____
                                                Elliott J. Stein (ES 4378)
                                                STEVENS & LEE, P.C.
                                                485 Madison Avenue, 20th Fl.
                                                New York, New York 10022
                                                (212) 319-8500

                                            Attorneys for Defendant
                                            Control Solutions, Inc.

SL1 758833v1/096175.00009

# EXHIBIT A

# TO STEIN DECLARATION



**CONTROL SOLUTIONS INC.** Box 5245, North Branch, NJ 08876
Voice (908) 526-9083 Fax (908) 526-8929

# Mutual Co-Marketing Agreement

This Agreement is made as of the 12 day of June, 2006, and by and between Control Solutions, Inc., a New Jersey corporation ("CSI"), with offices at 10 County Line Road, No. Branch, NJ 08866 and The Elevation Group, LLC, with offices at 1275 Glenlivet Drive, Allentown, PA 18106, a Pennsylvania corporation ("EG") collectively "Parties".

Whereas Control Solutions, Inc. ("CSI") has developed specific software products as set forth hereto on Exhibit "A" (the "Product"), and CSI desires to sell the product to customers ("End Users") through Elevation Group, LLC ("EG"). The CSI and EG ("Parties") expect that CSI will be able to assist EG in identifying End Users and that CSI's shall be compensated by EG in the form of a referral fee as set forth herein.

Whereas CSI desires to assist EG to sell SAP Business One systems to CSI's End Users, CSI shall reference said End Users to EG for EG's sales to the End User and EG shall compensate CSI according to Exhibit "B" as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and promises hereinafter contained, and for good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1- Pursuant to the terms and conditions of this agreement, CSI hereby appoints EG as CSI's non-exclusive representative for the marketing of CSI's Product (s). as described in Exhibit "A" attached, to SAP Business One End Users or any other SAP product user. EG agrees that the rights granted hereby are non-transferable and non-assignable.

2- CSI shall establish the prices, charges and terms governing the sale of the Product to EG as set forth in Exhibit "C" attached. CSI shall not sell the Product directly to EG's End Users and EG shall be involved in the pricing or provision of the Product to EG's End Users.

3- The Parties will provide initial training of the others respective organizations, at no cost to the other party, provided that said period does not exceed two (2) days each for sales and support. Any support or programming by CSI to EG's End User shall be billed to EG at 75% of the support and programming charges described in Exhibit "C".

4- If a sale of the Product, by CSI, results from a referral by EG, then CSIs shall pay EG a referral fee as set forth on Exhibit "B". This referral fee shall be paid to EG within thirty (30) days following CSI's receipt of payment for the Product. EG shall have the right upon ten- (10) day's notice to inspect CSI's records for the purpose of confirming the amounts due hereunder.

5- In the event that another company refers an End User, currently using or anticipating using Business One software from another company, to CSI, CSI shall refer it to EG for review prior to proceeding any further with the End User. CSI and EG shall then agree upon how the Parties shall proceed.

6/22/2006



6- The term of this Agreement shall commence on the date set forth above and shall remain in effect for one (1) year. It shall be automatically renewed for one (1) year unless notified in writing by either party sixty (60) prior to expiration. The Agreement may be cancelled, by either party, at any time during the term of the agreement with ninety (90) days notice in writing.

7- Nothing contained in this Agreement shall be deemed or construed as creating a joint venture, sub-contractor, sub-dealer or partnership between CSI and EG. CSI and EG shall have no power or authority to bind or commit the other and their status is, and will continue to be, that of independent contractor with respect to each other.

8- This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey.

9- This Agreement constitutes the entire understanding of the parties hereto and may not be modified or amended except in writing signed by both parties. No person a party hereto shall have any interest herein or be deemed a third party beneficiary hereof.

10- All notices required under this Agreement shall be in writing and delivered (a) by hand, (b) by certified mail, postage paid, return receipt requested, (c) by reputable courier service, requiring a signed acknowledgement of receipt or (d) by facsimile, provided that the original is promptly transmitted by one of the forgoing methods, properly addresses as set forth below.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed by duly authorized officers on the day first above written.

## Control Solutions, Inc. Inc.

By: _____

Name: _____

Title: _____

Facsimile: _____

Address: _____

## The ElevationGroup, LLC

By: _____

Name: GEORGE YANKOVICH

Title: PRESIDENT

Facsimile: 610-646-0777

Address: 1275 GLEN LIVET DRIVE, SUITE 100

ALLENTOWN, PA 18106

2

6/22/2006



## Exhibit "A"

## CSI Product Listing For Referral Fees

Open Series of Data Collection Application License Sales
- User License revenue based on sale of the Open Series of Data Collection Applications which include:
  - WMS (all versions Warehouse Management System and their related systems)

6/22/2006



# Exhibit "B"

## Commissions and/or Fees

Fees to CSI from EG for sale of CSI Products:

1- EG shall pay CSI 50% of the list price (as described in Exhibit "C") of the product (s), which is sold to an End User by EG.
2- EG shall pay 50% of the list price (as described in Exhibit "C") to CSI for any renewal annual support agreement/license fees after it is sold by EG.
3- Software technical support by CSI to EG for the Products sold by EG shall be directly to EG via telephone or VPN communications. There shall be no direct support to EG's customers unless approved by EG. This customer technical support shall be billed to EG at the discounted price as addressed in Exhibit "C".

Fees to CSI from EG for EG's sale of SAP Business One or any other SAP product:

1- EG shall pay an initial fee to CSI for every SAP Business One system or other SAP product(s) sold by EG to a CSI referred End User.
2- The fees will be calculated on the gross profit ("Gross Profit") of each sale described as the difference between the End User sale price and the license fee paid by EG to SAP:
   a- The fee for each referral shall be 20% of the Gross Profit from the sale of SAP Business One Licenses or other SAP product licenses where CSI does not actively participate in the selling process.
   b- The fee for each referral shall be 50% of the Gross Profit derived from the sale of Business One licenses or other SAP product licenses sold by EG where there has been active assistance from CSI during the pre-sale cycle.
3- EG shall pay CSI a fee of 20% on the Gross Profit of all annual license maintenance fees of the Business One Software and Support fees paid by CSI End User for any SAP product for the first two (2) years SAP Business One or SAP other products to new customers.

4



## Exhibit "C"

## CSI Product Pricing to End Users

**OPENWMS™ FOR END USERS**

| | Control Solutions Inc. 10 County Line Rd North Branch, NJ 08876 | |
|---|---|---|
| | Phase 2 Offering | Phase 1 Offering |
| Core System* | $88,500 | $78,500 |
| Annual Service Charges | $13,275 | $11,750 |
| Database | MS SQL/Hosted | MS SQL/Hosted |
| Users | 150 | 150 |
| Sku's | Unlimited | Unlimited |
| Receiving | Included in base system | Included in base system |
| Put-Away/Storage | | |
| Picking/Order Selection | | |
| Shipping | | |
| Inventory Management | | |
| Reporting | | |
| Navigation | | |
| Returns | | |
| Interleaving | | |
| Auto Replenishment | | |
| Quality Assurance | | |
| Operator Performance | | |
| Container Condition | | |
| 21CFR Part 11 | | |
| Web Srevices | | |
| 1. Advanced Ship Notice (E-Commerce) | $2,500 | $2,500 |
| 2. Assembly Kitting | $7,500 | $7,500 |
| 3. Bulk Material Handling | $7,500 | $7,500 |
| 4. Cross Docking | $2,500 | $2,500 |
| 5. Management Reporting (5 Reports) | Request Pricing | * |

6/22/2006



# CONTROL SOLUTIONS INC.
10 County Line Road, Unit 25, North Branch, NJ 08876

Voice (908) 526-9063   Fax (908) 526-8922   www.consolut.com

Amendment to Mutual Co-Marketing Agreement
Between
Control Solutions, Inc. ("CSI") and Elevation Group, LLC ("EG")
Dated June 12, 2006

This Amendment One (1) dated August 14, 2006, when executed will modify the agreement between EG and CSI as to the following terms. All other provisions of the Mutual Co-Marketing Agreement ("Agreement") will remain in effect. The date of this amendment is effective with the signature of this agreement by both CSI and EG.

Exhibit "B" of the Agreement shall be modified with the addition of the following terms to the section described as "Fees to CSI from EG for the sale of CSI Products":

**Modification:**
1- Payments by EG to CSI on sale of Product(s) as described in Exhibit "C";
    (a) EG shall pay 50% of the list price of the listed Products if EG sells the Products without the assistance of CSI.
    (b) EG shall pay 75% of the list price of the listed Products if CSI assists EG in the sale of the product.

**Additions:**
4- EG will purchase any and all hardware and software related to the hardware from CSI, which may be purchased by the customer from EG relating to the software as described in Exhibit "A" of the Agreement. There shall be no discounts from the list price by EG for the above described hardware and related software. Should the customer or EG purchase hardware from another source, CSI will be entitled to receive, from EG, all interface and embedded software fees relating to the hardware being acquired from a third party source.

5- Should a customer require modification to the CSI's OpenWMS® software, an additional software module or new standalone software, EG shall contract with CSI to fulfill the work related to the customer's needs.
    (i) CSI will provide a 15% discount to EG from the proposed fees if there is no interfaced needed to be implemented by EG to any SAP product or,
    (ii) If an interface is needed to be developed for any SAP product by EG, CSI shall provide EG with a 25% discount from the proposed price.

---

An Automation and Supply Chain Management Solutions Company

JUN-11-2007 01:49PM FROM-CONTROL SOLUTIONS, INC +19085268928 T-119 P.007/026 F-600
Case 1:07-cv-08120-HB Document 6-3 Filed 10/19/2007 Page 11 of 11

Aug 22 06 04:54p REM Associates 310 265 0943 p.3
p.2



Mutual Co-Marketing Agreement
August 14, 2006
Page Two

6- CSI will not communicate with the customer on any hardware or software requirements unless directed by EG or the customer.

Control Solutions, Inc.

By: _____

Name: _Gethard E. Manukrun_

Title: _President/CEO_

Date: August 14,2006

The Elevation Group, LLC

By: _____

Name: _George Yankovich_

Title: _President_

Date: August 14, 2006